**Hilmar ZEISSIG, Appellant,**

v.

**Heidi ZEISSIG, Appellee.**

**No. 17645.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 8, 1980.

Rehearing Denied June 26, 1980.

Mary Mansfield Craft, Eugene L. Smith, Houston, for appellant.

Fulbright & Jaworski, Robert M. Welch, Jr., Hugh Hackney, Houston, for appellee.

Before PEDEN, EVANS and WARREN, JJ.

PEDEN, Justice.

Dr. Hilmar Zeissig seeks a writ of error from the granting of a writ of habeas corpus to his estranged wife for possession of their three children. The habeas corpus was granted under authority of Texas Family Code § 14.10.

Dr. Zeissig's first two points of error are:

1. The trial court erred in issuing its writ of habeas corpus giving possession of the parties' children to Appellee because:

a. The Application for Writ of Habeas Corpus reflected on its face that no legal basis existed for issuance of the writ under Section 14.10 of the Texas Family Code;

b. The writ was issued without notice to Appellant and without affording him an opportunity to appear and present his defenses to Appellee's claim that she was entitled to possession of the children, in violation of Appellant's rights under Texas law and his right to due process of law under the 14th Amendment to the United States Constitution.

2. The trial court's seizure of the children was erroneous because:

a. No writ of attachment was issued commanding the sheriff to take possession of the children, in violation of Appellant's rights under Texas law and his right to due process of law under the 14th Amendment to the United States Constitution;

b. No notice was given to Appellant commanding him to produce the children in court, in violation of Appellant's rights under Texas law and his right to due process of law under the 14th Amendment to the United States Constitution.

It is clear that Dr. Zeissig was given no notice of the filing of the application for habeas corpus or of the hearing on it and that he was thus deprived of his fundamental right of due process of law.

The appellee's position is even if there was a lack of due process, the trial court's order was not appealable.

The pertinent provisions of § 14.10 of the Family Code are:

(a) If the right to possession of a child is presently governed by a court order, the court in a habeas corpus proceeding involving the right to possession of the child shall compel return of the child to the relator if and only if it finds that the relator is presently entitled to possession by virtue of the court order.

(b) The court shall disregard any cross action or motion pending for modification of the decree determining managing conservatorship, possession, or support of or access to the child unless it finds that:

(1) the previous order was granted by a court that did not have jurisdiction of the parties; or

(2) the child has not been in the relator's possession and control for at least 6 months immediately preceding the filing of the petition for the writ.

(c) The court may issue any appropriate temporary order if there is a serious immediate question concerning the welfare of the child.

(d) . . .

(e) . . .

(f) . . .

All of the acts and omissions in Fort Bend County unfolded on the same day, September 13, 1979. At 8:50 that morning an application for writ of habeas corpus was filed in the District Court for Fort Bend County by the attorneys for Heidi Zeissig. It recited that she resides in Santiago, Chile, and is the natural parent of the three named children, twin boys, age 9, and a girl, age 6. She claimed that she is entitled to possession of the children on the basis of a Chilean statute making her the legal equivalent of a managing conservator and by virtue of a Chilean court order and grant of guardianship entered August 21, 1979 in Santiago. She asked the trial court to take judicial notice of the statute and court order and to give "full faith and credit" to both, since "the laws of Chile and Texas differ on this particular point of law."

She alleged that the children were illegally restrained by Dr. Zeissig and Ria Kessler or their agents at a stated address in Fort Bend County and asked for an attorney's fee. She prayed for a writ of habeas corpus commanding that the children be brought immediately before the court and returned to her.

Attached to the application were a document in the Spanish language purporting to be from the Chilean Consul in Washington, D. C., and an "official translation" of her statement in a Chilean court alleging that her husband, Dr. Hilmar Zeissig, had illegally retained their children after a visit. There was also what appears to be a judgment granting her request that guardianship be awarded to her and that the father be ordered to deliver the children to her immediately. The judgment appears to be exemplified by the U.S. Vice Consul. The record is silent as to any attempt to give notice to Dr. Zeissig of the Chilean hearing or judgment.

When the application was filed in the Fort Bend County district court, the judge of that court said he wanted to hear evidence on the writ. The only witnesses were the applicant and Mr. Robert M. Welch, her attorney.

The applicant testified that she is the natural mother of the three children, who have permanent domicile with her in Santiago, Chile. She is married to Hilmar Zeissig; when they separated he gave her a power of attorney that had been prepared in Germany. In response to a leading question she agreed that it gave her custody and control of the children and the power to establish their domicile. A translation of the power of attorney was introduced in evidence, however, and its only provisions relating to the children authorized their mother to live with them and to travel with them in foreign countries. The other lengthy provisions made her Dr. Zeissig's attorney-in-fact for a wide range of prospective business transactions.

Mrs. Zeissig said her husband has been living with Ria Kessler since 1978, and as far as she knew, Ria Kessler was living with the children in Fort Bend County, Texas. She testified that Chilean Article 223 provides that regardless of fault, a divorced mother is to have possession of all minor children for 14 years. A written translation of Chilean Article 223 was admitted in evidence.

She related that her husband sent the children tickets last July for a holiday visit, promising to return them early in August, but he later called and told her he would not do so. She introduced in evidence an official translation of the Chilean court's order granting possession of the children to her. This question and answer followed:

Q. "So far as you know that was fully in compliance with Chilean law?"

A. "Yes."

She was not shown to be an expert on Chilean law.

There was, of course, no cross-examination and no objection to the admission of

the Chilean records. The appellee now claims that the trial court properly admitted into evidence that Santiago court order and the applicable statute pursuant to Article 3731a, § 3, V.T.C.S., "which provides that foreign documents or statutes may be admitted into evidence without delivery of copies to the adverse party if the court determines that the adverse party would not be unduly prejudiced." The wording of Sec. 3 of Article 3731a is:

> Such writing shall be admissible only if the party offering it has delivered a copy thereof, or so much of it as may relate to the controversy, to the adverse party a reasonable time before trial, unless in the opinion of the trial court the adverse party has not been unfairly surprised by the failure to deliver such copy.

We find no basis to conclude that Sec. 3 makes admissible copies which cannot even be shown to the adverse party at the trial—because he has not been given an opportunity to be present.

Mr. Welch testified as to his experience and qualifications in the field of family law and stated how much time had been spent on this case.

The trial judge then stated that he granted habeas corpus as to the three children, gave their mother possession of them, and ordered that Dr. Zeissig pay $8,500 of his wife's fee for her attorney.

Later that same day the judge signed an order for the issuance of the writ of habeas corpus directed to Dr. Zeissig or Ria Kessler, commanding either of them or their agents, servants, employees to produce and have before the court instanter the three named children and "*to show cause* why the children should not be returned to appellant." (emphasis added).

Then at 2 P.M. that day, still without an opportunity having been given for Dr. Zeissig to appear and show cause, offer evidence, or even object to inadmissible evidence, the trial judge signed an order reciting that the "evidence in support of the said application is full and sufficient for the granting thereof," granting Heidi Zeissig's writ of habeas corpus and ordering that

possession of the (named) children "is immediately delivered by this court to the Applicant, Heidi Zeissig." There is nothing to indicate that a writ of attachment was issued commanding the sheriff to take possession of the children, and there was no allegation, pursuant to § 14.10(c) of the Family Code, that there existed a serious immediate question concerning the welfare of the children.

The writ was issued, addressed to "Dr. Hilmar Zeissig, Ria Kessler, or their agents, servants or employees." It commanded the respondents to produce the children instanter before the judge and show why they were restrained, but the citation accompanying the writ commanded the "defendants" to appear by filing a written answer to the plaintiff's petition by 10 A.M. on the Monday following the expiration of 20 days. The officer's return states that the writ was served on Ria Kessler at 4:20 P.M. on September 13, 1979. It also recites that Dr. Zeissing was "not served by request of attorney." The record is silent as to when the deputy was asked not to serve the writ on Dr. Zeissig.

Later that day, at 4:55 P.M., the trial judge re-convened court briefly. In attendance were only Mrs. Zeissig, her attorneys, the children, and the deputy sheriffs who had delivered them to the courtroom. It does not appear that an attorney ad litem was appointed to represent the children's interests.

Mr. Welch merely tendered into evidence the record made prior to issuance of the writ and the exhibits previously admitted. The trial judge elicited testimony from the deputy sheriffs that they had stopped Ria Kessler's car at 4:20 P.M., had taken the children from it, and had served the citation on her.

We conclude that both of the appellant's first two points of error are meritorious.

Appellant's third point of error also voices a valid complaint: that the trial court erred in ordering him to pay Mrs. Zeissig's attorneys $8,500 as their fee. The judgment appears to have been rendered

orally but so far not reduced to writing and signed by the judge, so we will merely point out the basic impropriety of charging such fee against Dr. Zeissig without giving him an opportunity to appear and present any defenses.

In response to the appellee's argument we note that the Texas Supreme Court held in *Gray v. Rankin*, 594 S.W.2d 409 (1980), that an order granting a writ of habeas corpus is not an appealable order. The court noted that the Family Code provides for appeals from those orders entered under Chapter 14 which are listed in Section 11.-19(b)(2) and that the granting or denying of a writ of habeas corpus is not one of those listed.

The appellant seeks to distinguish *Gray v. Rankin* 1) by pointing out that the judgment in our case is not merely erroneous, it is void, and 2) by arguing that a writ of error to a court of civil appeals is clearly distinct from an appeal in the ordinary manner.

We conclude that the Supreme Court did not mean to say that an appeal may be prosecuted by writ of error, and we hold that the clear holding in *Gray v. Rankin* is dispositive of this case. We recite the facts of this case so the Texas Legislature can consider whether § 11.19 of the Family Code should be modified so that under similar circumstances, if they occur again, a parent will not be relegated to the remedy of mandamus.

The appeal is dismissed.